Case 23-5662, Dan Carman et al. v. Janet Yellen et al., argument not to exceed 15 minutes per side. Counsel, you may proceed for the appellants when ready. Good morning, Your Honors. May it please the Court, I'm Jeff Hetzel. I represent the plaintiff appellants. I'd like to reserve three minutes for rebuttal. The plaintiffs and Thomas Moore challenged the constitutionality of the ACA three and a half years before its effective date. This Court said that standing was easy because the law compelled those plaintiffs to do something they didn't want to do. And it praised the plaintiffs' timing, explaining that their early lawsuit allowed the courts to avoid frantic emergency motions. We challenged the constitutionality of the amended 6050I just over a year before its effective date, much closer in time than in Thomas Moore. The amended 6050I also compels us to do things that we don't want to do. Our claims should have been allowed to proceed to the merits for the same reasons. I'll start briefly with standing. We have standing because we're challenging a reporting mandate and we're the ones who have to fill out and file the reports. In every case that we know of, that gives us standing. What is this, so you're, this is kind of the regulated entity theory, right? Is that just a proxy for compliance costs or is it something else? And I guess my question is, if it's kind of a, you treat it as kind of a shortcut, and some of the cases do too, what is it, what does it get you? Does it get you injury in fact, traceability and redressability on basically any claim that you can come up with? Yes, your honor, so it is an independent basis for satisfying the injury in fact requirement. Thomas Moore is a good example of that. All the court asked was whether the plaintiffs were directly regulated by the statute. We do allege independent bases for standing, compliance costs, the economic harms, the credible threat of enforcement. So if there's any overlap there, we can satisfy those independently because the reporting mandate. I think that these direct reporting mandate standing cases all go our way because you have all these injuries at once. You have to spend the time and money filling out the report. You're, in our case, our businesses are hurt by it. And we face a credible threat of enforcement for a felony if we don't comply with that. But you agree, I mean we don't dispense standing in gross, you know all that, right? So, Schultz seems to me to be a pretty close case to this one. And, you know, that would get you, let's say the Fourth Amendment claim, the association claim because you're the reporting entity, probably the enumerated powers. What about the self-incrimination? Even Schultz said that one was premature. And I don't think you've got anything that would distinguish yourself from Schultz on that one, is that right? So, specifically on that one, the plaintiffs there were alleging that there's, I think they were alleging that the injury would only come if they alleged that, if they invoked their self-incrimination right and they were denied. Here we're alleging the reporting requirement itself violates our self-incrimination rights. So all five of our injuries are this. So, how does that happen in terms of, I don't exactly understand your theory about how that's ripe, the self-incrimination claim. Our theory is that the reporting mandate itself, we're going against adverse precedent here. The reporting mandate itself violates our right to self-incrimination. This is going back to like Boyd, the 1800 Supreme Court case that held that reporting requirements like this violated our right against self-incrimination. The cash reporting is perfectly legal, right? So, neither this court nor the Supreme Court has ever decided whether the cash reporting is constitutional under any constitutional theory. We don't take a position on cash reporting because we think the digital asset reporting is worse. But then on this question of the injuries, I think that what's important here is that all of our claims say, and you have to assume our view of the merits for standing purposes, and all of our claims say that our constitutional rights are violated by the reporting mandate itself, by the act of forcing us to fill out and file these reports. Do you have to tie that to each claim separately in order to show standing and ripeness? So, no, we don't. We have to, so every, in a way. So, you need standing for every claim, but the same injury can do the job for multiple claims when you're all challenging the same thing. I think the clearest case on this is the Toll Brothers Third Circuit case that we cite, where the plaintiffs cite, you know, brings 11 different challenges to the same thing. And the court says, of course, we don't need a different injury for each claim because every claim is challenging the exact same thing. And so, if the allegedly unlawful thing is causing you an Article III injury, that gets you through the standing. You don't, like, use up one on one legal theory and then have to find a new one. If we did, we have four plaintiffs who each have four separate injuries, so we could, you know, we can get up to five if we need to, but that's not how the standing analysis works. And, for example, in Schultz, the plaintiffs were challenging multiple different provisions, and so they needed different standing for the different provisions that they were challenging. But here, we're just challenging one thing, and that's the amended 6050-I. I have three main...so, last point on ripeness is that... Sorry, the last point on standing is that... So, the injury here is having to fill out the reports, right? Four separate injuries, Your Honor. Having to fill out and submit the reports. Having to spend a lot of time and money. It's very hard to actually track these transactions and comply with them. We're having to incur compliance costs on them. So, is the same thing, kind of? Compliance...I mean, having to fill out the report and spending time filling out the report. I mean, it's... So, this court has treated them differently. So, like, Thomas Moore was just about direct regulation. Kentucky v. Yellen was about compliance costs. And then... Let me...I got you. So, how does that tie to the Fourth Amendment, then? What is the... How does that relate to, like, an unreasonable search? Like, okay, I'm spending money doing this, but that's not a Fourth Amendment injury, spending money filling out a report. So, the standing analysis is whether the thing that you allege is illegal causes you an Article III injury. This court has said, I think, really clearly in two 2021 cases that we cite, Checkers v. Dublin and Gerber v. Herskovitz, that the standing inquiry does not depend on your merits theory. At the standing stage, the court just assumes that the plaintiff is right on the merits. There's no intertwined analysis. And so, you know, there are... You have to show that a Fourth Amendment violation is causing the harm for traceability. And on our theory, it is. So, you assume our theory is correct on the merits. We say that our Fourth Amendment rights are violated by the collection of the reports, and that's exactly what's causing us all four of our injuries. And, you know, there are reporting mandate cases that follow exactly our doctrine. There are none that ask these follow-up questions about the merits. So, like Davis v. FEC is a Supreme Court case. It was about a reporting mandate. The candidate brought a First Amendment claim. The plaintiff was a candidate who brought a First Amendment claim. It was challenging a requirement that he report certain financial information to the government. The standing analysis, which was unanimous, just asked whether he was going to be directly subject to the reporting requirement, whether he would have to send in reports. It didn't ask how that relates to his First Amendment claim because he alleged that that's what violated his First Amendment rights. There's a Fourth Amendment case, Chandler v. Miller, where the plaintiffs had to send in reports about drug test results. There's mootness analysis there where they talk about the injury. The injury is just sending in the reports. They don't ask any follow-up questions about, well, how does sending in the reports relate to your merits theory, because they're two separate inquiries. Standing is an unchanging element of Article III. Can I ask you a question a little bit divergent, which is we have generally a doctrine of third-party standing, right, where we ask if you are essentially asserting someone else's rights. This is a violation of the Constitution for somebody else's constitutional rights. But we still allow you, the plaintiff, to sue because you have demonstrated an injury in fact yourself that would be redressed if this law is struck down. But we tend to ask these prudential questions, right, about are you the right person to bring this. And so we like to see some sort of tie between the actual claim and the person bringing it. How do you think about that analysis here vis-à-vis what you're asking us to do? Yes, Your Honor. So we are not suing on behalf of anyone else. We are suing on behalf of ourselves. We are the ones who have to file these reports. We are the ones whose activities are revealed to the government, whose transactions are revealed to the government, whose transactions can be filed. But you're not basing your theory. You're asking us to find that because you have an injury like Judge Nelbandian is talking about based on compliance costs or money or loss of business that then you can sue because of a Fifth Amendment violation for self-incrimination. You're not asking us to find that you have standing because you are going to incriminate yourself. And that's your injury. And we have to find that that is an injury in fact and it's imminent. So that's what I'm getting to. How do you get to the congruence or just don't you need it at all? And if you don't need it at all, why do we ask for it in third-party standing cases? We allege exactly that. It is our reasonable expectation of privacy that's violated. It is our expressive rights that are violated. It's no one else's who we're suing on behalf of. For every one of our claims, it is our rights that are being violated. The third-party standing rights are like where a teacher sues on behalf of the students whose rights are being violated. We don't even know who we'd be suing on behalf of here. We're suing on behalf of ourselves. How is your self-incrimination? Take Carmen in particular, your lead plaintiff. How potentially is self-incrimination shown here? I think the reason that the self-incrimination one is different and tricky is because we're going up against obviously adverse precedent there and we're just preserving a claim. This court said in Gerber that standing shouldn't be used to prevent plaintiffs from fighting adverse precedent. We're just saying that reporting mandates like this generally violate that right based on a theory of that amendment that's been rejected. Then we're squarely under existing precedent under our other four theories, our other four claims. The point is that for all of them, assuming our merits position to be correct, we are the ones who are injured. We have Article III injuries that work in every case that we know of. Can you briefly talk about, I know your time is running out, but I'm curious about the ripeness issue on the void for vagueness. I know there are cases out there, especially in the D.C. Circuit, that suggest that regulations can cure kind of fair notice and due process issues. If that's true generally, why shouldn't we wait for the regs to come out before we deal with that? Yes, Your Honor. You're right. It only applies to the vagueness analysis. In all other cases, facial challenges are immediately right. The Supreme Court has said that. This court has said that over and over again. But that vagueness case, they have one vagueness case. It's McGaw. It's from this court in 1997. That case relied on the fact that the agency had already enacted a formal procedure for curing the vagueness. Anyone who is subject to that law could go to the agency and get a formal resolution. It was about magazines and guns. They could just say, hey, which side of the line am I on? They'd get that answered. It also relied on the fact that at that time... Okay, but what about the... And if you don't know, that's fine. Like the D.C. Circuit, for example, dealt with the bump stock issue that we dealt with, whether it's a machine gun or not. Neither here nor there. But they said in that case, look, the regs... And it went back to the district court. But the idea was somebody says, oh, I don't know whether this is a machine gun or not under the statute. And the court says, well, let's wait until the regs come out because the regs can provide fair notice. In other words, if it's possible that the regs can cure any notice problem or vagueness problem or whatever it is and put aside whether that's something that under first principles, would we agree that a vague statute can be fixed like that? If it can, then you would just simply... You would have to wait for the regs to come out before you would do anything regarding the kind of vagueness of the statute, right? No, Your Honor. So, first of all, it's a post-filing development. So it can't defeat ripeness for the government. Post-filing developments can never defeat ripeness. Second of all, a similar situation came up in Kentucky v. Yellen. And no one argued that it was a ripeness issue. The challenge here is to the statutory text itself. If the regulations come out, then there might be separate problems with the regulations. They don't even have authority to interpret the regulation, the provisions that we say are vague, let alone to affect any of our other merits claims. And if they were to, speculation about that, without any representation that they're doing that, wouldn't sound in ripeness. And your vagueness claim is a facial one. So it means that there's no application of the statute that can be discerned that would defeat a vagueness claim. So that's the other distinction from McGaw, Your Honor, is McGaw assumed that that was the standard and the plaintiff there admitted that there were valid applications of the statute. In Johnson, the Supreme Court said very clearly that is not the standard to win on vagueness. You don't have to show that it's vague in all applications. In Johnson, there were some clear applications. They talked about a past Supreme Court case where the question was whether a prohibition on unreasonable and unfair prices was vague. And they said yes, even though obviously some applications of that statute were not vague, like if you charge a million dollars for a sandwich. So Johnson is the latest merit standard that we'll have to meet on vagueness. The government has lots of arguments for why this law isn't unconstitutionally vague, and those will help it on remand on the merits, but they're not relevant to standing and just showing one wouldn't defeat us on the merits. Time has expired. Thank you. Thank you.  May it please the Court, Jeff Klimas for the Appellees. The threshold question in this case is whether plaintiffs are required to allege an actual or imminent injury or invasion of their constitutional rights to the merits of their constitutional claims. The district court's holding that they were is supported by three different lines of cases. First, this Court's decision in Parsons, which plaintiffs do not acknowledge or deal with in their reply brief, as well as Judge Batchelder's opinion in ACLU, which said that a cognizable constitutional injury is required for Article III standing to bring a constitutional claim. Second, this Court's decisions in cases like Checkers and Gerber, which say there must be a colorable or arguable invasion of the constitutional interest to have Article III standing to bring a constitutional claim. And then third, this Court's decision in Smith v. Jefferson County Board of Educators, which said that a plaintiff cannot challenge the constitutionality of government action unless it is within the class whose constitutional rights are allegedly infringed, and a plaintiff that does not fails the zone of interest test. Now, we concede that plaintiffs point out correctly in their reply brief that that is a non-jurisdictional prudential test rather than a jurisdictional test, but that just means that the case would be dismissed under 12b-6 rather than 12b-1. Well, to put their case as simply as possible, they're saying that they are subject to this reporting requirement, and this is going to cause them harm, and they have various harms, which they allege in terms of separate claims, five separate claims. Why isn't that enough to give them standing? Because they are going to have to report. Yes, Your Honor, so I think that it has to be dealt with on a claim-by-claim basis because we want to make sure that they are trying to vindicate their own constitutional rights and not the constitutional rights of others. So the definition of an injury in fact for purposes of standing is the invasion of a legally protected interest. And so when you're asserting a constitutional claim, we think that the invasion of a legally protected interest has to be the constitutional interest that you're asserting. As Judge Batchelder said multiple times in... But she's speaking just for herself, so...  You should not rely entirely on that. Sure, just for persuasive value. But she did say that it would be unprecedented for a plaintiff, for example, without a First Amendment injury to bring a First Amendment claim. How do you deal then with cases like from the Supreme Court, like the Trump v. Hawaii, or Hawaii v. Trump cases and things like that, where you have family members who themselves, you know, the court said, don't have an establishment clause interest that's being violated here, but they were going to have an injury if they're not going to be able to see their family members. So their injury of not being able to see their family members gives them an injury in fact. And if the law violates the establishment clause and is enjoined, then their injury is redressed. It's not their rights. I haven't read that particular case, but the issue, I think they are asserting in some way their own rights, that they're saying they are being deprived of something real, their associational rights with family members. And that is the injury in fact that they're... Well, but they're not asserting their own establishment clause, right? And the court was clear that they weren't finding, you know, the question of whether they, kind of the scope of the establishment clause was a merits question. They weren't asserting their own rights. They were saying they have an injury and it will be redressed if the law is enjoined. We would submit that the threshold question is whether there's an arguable or colorable invasion of the relevant constitutional right. So, for example, you know, none of the plaintiffs here, with respect to their Fifth Amendment self-incrimination claim, say that there is any likelihood that they'll ever be required to report something that would actually implicate them in criminal conduct. And we would say in that instance, they are clearly suing to vindicate the Fifth Amendment rights of parties not before the court rather than their own rights. So, hypothetically, if they had a meritorious self-incrimination claim, could it be raised then when they're actually being required to make a report that would incriminate them? Yes, Your Honor, that would be the appropriate time to raise that issue to say this particular report that we would have to file is going to implicate, you know, what in this particular part of the report is going to implicate our self-incrimination privilege. But unless they identify what that is in some way, in some level of allegation, they have given us nothing so far. But unless they do that, you know, we can say it's a standing issue because there's not an actual or imminent injury to their Fifth Amendment rights. Or we can say this is also a ripeness issue, that you can't just say, well, at some point in the future, someone might have to incriminate themselves by complying with this reporting requirement. What if their theory is just by reporting, even if they're not saying anything like, oh, I'm, you know, trying to do something illegal with the money that I'm reporting about, that just the reporting itself somehow, maybe it's, again, maybe not a good theory in the merits or maybe a foreclosed one, but what if the reporting just itself, they're saying violates the Fifth Amendment? I understand that that's their theory, but they have to say that it's affecting them in a concrete and particularized way, that they have to have an arguable or colorable invasion of their Fifth Amendment rights. Well, what about the search, the Fourth Amendment issue? Is that more satisfying standing requirements? That is certainly their best argument for standing, and if we go claim by claim, I think the Fourth Amendment argument is certainly the best claim for that purposes. Our argument is that they have not made plausible factual allegations to show that they have any privacy interest in the information that would actually be reported based on what they've alleged would be reported as to their transactions. Is that verging on a merits analysis as opposed to a standing analysis? It gets closer than any of the other claims, absolutely. We would say simply this, we would say every transaction that plaintiffs are engaged in that they've alleged that would be reportable is one that involves the receipt of taxable income, and we don't think that the plaintiffs have any privacy interest in shielding from the IRS the details of their taxable transactions, particularly in this situation where they're posting details of many of those transactions online through the public ledger. But we understand that this is getting closer to the merits than any of the other claims, but we still think... Why doesn't Schultz control the Fourth Amendment? Let that claim go forward. It's a reporting requirement. I mean, I don't know why that doesn't just take care of it. I mean, Schultz seems pretty close to this case, I mean, in terms of, like, generally what's going on, and the Fourth Amendment claim there went forward. The Fifth Amendment self-incrimination claim did not go forward. A constitutionality claim, like enumerated powers, would seem to me to be a claim that would go forward. The associational claim, the problem with the reporting requirement in Schultz was the ACLU or whoever it was wasn't reporting, but here they are. So that would kind of take care of that, too. I mean, I don't know why it doesn't just line up. The vagueness one is a different issue, but... So certainly, again, we think that the Fourth Amendment is the closest call as to standing. What about the enumerated powers? Why is that one not going forward then? So this court in Acker said that the idea that taxpayers don't have to file returns or reports with the IRS reporting their taxable income was wholly without merit, and every transaction that plaintiffs allege will be reported by them under the reporting requirement is one that is going to generate taxable income. So why shouldn't that claim, the enumerated powers claim, be decided on 12b-6 grounds instead? Well, I think that what Judge Caldwell did is relevant to Article III because she said anything that goes beyond the square exercise of Congress's taxing power with respect to that claim is speculative because it all depends on what the IRS is ultimately going to do with the information it receives, not the direct reporting of that information, which, again, falls squarely within the reporting of taxable income to the IRS. On the enumerated powers claim, did not the briefs in front of the district court address this sufficiently on 12b-6 grounds, failure to state a claim, such that we could address the claim on 12b-6 grounds? Yes, Your Honor. I think that it was fully presented to the district court on that basis, and obviously this court can affirm on any grounds. Another claim that Brother Counsel spoke about was the void for vagueness claim, and we think this is another issue withstanding, as well as ripeness, as Your Honors have pointed out, because many of the alleged vagueness issues that plaintiffs have talked about in their amended complaint actually don't go to vagueness. They go to practical concerns, but they're not actual allegations that the statute is vague. Or, alternatively, when they do say something that gets close to vagueness, they make no allegations that this is a kind of transaction that they have ever engaged in or have any intention to engage in in the future. So, again, we have a situation where the plaintiffs would be suing to vindicate the void for vagueness rights of a third party not before the court rather than their own because they're not saying this vagueness issue implicates them. Brother Counsel talked specifically about the Johnson case from the Supreme Court. That case involved a question of how to interpret the Armed Career Criminal Act, and there's the residual clause of that statute, which talks about an enhancement, a sentencing enhancement, if there's a felony involving conduct that presents a risk of physical injury to another. And the court's issue there was deciding whether or not you evaluate that risk of physical injury to another at the general level that the crime is defined by the state legislature or whether you look at the more specific set of facts in terms of what the criminal defendant actually did in the case where he was convicted. That was a matter of statutory interpretation. It's not a case that talks about standing at all. It's a matter of interpreting the Armed Career Criminal Act, and it has no bearing on void for vagueness or what kind of standing someone needs to bring a void for vagueness challenge. The plaintiff in that case was someone who said, I was convicted of being a felon in possession of a firearm. It is ambiguous, it is vague, as to whether or not that is something that presents a risk of a serious physical injury to another when you look at the crime as defined by the state legislature, which, again, was a matter of statutory interpretation, not a matter of some overreaching principle of constitutional law. We also think that there is a serious rightness concern here because we think that it would behoove the court to wait on these issues until the Treasury Department has a chance to issue guidance. When are you going to issue guidance? That's an excellent question, Your Honor, and I think at the time that we briefed this case below, there was an expectation that the guidance would already be out. I'm not asking for anything that's impertinent on my part, but I'm just curious, given that the statute was supposed to take effect the first of the year here. Yes, Your Honor. And the regs have not come out. We're not even at the notice of proposed rulemaking stage, Your Honor. So this is certainly far behind what I would have expected back in June 2022 when this case was filed. So what does that mean, then, in terms of the effective date of the statute if there are no regs? So as we spelled out in our brief and then as the IRS has since publicly stated, absent regulations, the 2021 amendment requiring reporting of digital assets does not go into effect. There's no record-keeping requirements and there's no reporting requirements because the record-keeping requirements are linked directly to things that have to be reported. If there's nothing to be reported, there's nothing to maintain records on. And so unless and until those regulations come out, the IRS has stated, and we've explained in our brief why this is correct, that there is no reporting or record-keeping obligation. It's interesting to speculate, then, how if it were speculatively the purpose of the IRS not to do something that Congress wanted to do, that they could forestall reporting of digital assets, which transactions income therefrom by not issuing a reg. But that's what you're saying is the effect. Correct, Your Honor. So if you look at the text of 6050 Cap I, paragraphs A and B, it talks about people making returns at such time as the Secretary may by regulations prescribe and in such form as the Secretary may prescribe. So Congress specifically authorized this activity or non-activity, then? It made it dependent on the IRS doing something and the IRS has not done something. I'm sorry to have taken you astray here. Not at all, Your Honor. I think this is important.  So if you look at the dash one regs, parens C has a definition and it says for purposes of this section, cash means, and then it says coin, currency, and cashier's checks. The form itself, form 8300, you have to identify what kind of cash is involved in these transactions and it lists out currency, cashier's checks, money orders, bank drafts, and traveler's checks. This is at page 384 of the record below. The instructions to that form at 387 of the record have the same definition of cash that is listed on the form itself and is listed in the regulations. So someone to actually file and try to comply at this point would have to actually do something to the form to change it in order to be able to say that they were submitting it and accurately reporting. We just don't think it's in effect and that is why the IRS came out with the announcement saying it is not currently enforcing it, which makes a difference from some of these other cases that were allowed to go forward because there was an actual or ongoing threat. Or, you know, in McGaugh there was some safety valve. Taxpayers do have a safety valve. They could request a private letter ruling from the IRS, but they think the private letter ruling would come back from the IRS saying, we're not enforcing this yet and we won't until there are regulations. And so we would say that that ripeness concern is particularly prescient for that case, but it would also impact things like the Fourth Amendment analysis that the court would do if it were to proceed to the merits. If it's supposed to be weighing the privacy or sensitivity of the information that's being collected versus the government's interest in that information, it would certainly be important to know precisely what was actually going to be reported to do that analysis. And the announcement includes no record-keeping obligation, no current record-keeping obligation? It does not specifically say record-keeping, but the record-keeping requirement that's set out in the regulations is tied specifically to what is being reported. If there's nothing to be reported, there's nothing that has to be kept as a record. If there's nothing further, we would ask for the court to affirm. Thank you. Thank you.  Thank you, Your Honor. Just three brief points. On ripeness, first of all, the announcement doesn't say anything about record-keeping. The related transaction rule that's already in the regulations requires us to report transactions up to a year before a report is due. So we allege repeatedly, and we have to incur compliance costs now for record-keeping because of the related transactions rule even before enforcement begins. And then on ripeness more generally, just the two key points on ripeness are this is a self-executing statute. This court's decision in Island Creek says that if you read the amendment 20 to 6050I, it's clear from the text. If it's self-executing, we win on ripeness because it means that the January announcement was a post-filing enforcement delay. Post-filing things never affect ripeness, and enforcement delays never affect jurisdiction at all. The SEC just delayed enforcement of its climate disclosure rule precisely to allow challenges against it to proceed. And then... In those cases, they had a rule. And the thing that was being challenged was the rule. And here the thing that's being challenged... Right, but here we don't have a rule. We have the statute. Right, and it's only the statute that we're challenging. And that's why the Supreme Court has said that facial challenges to statutes are ripe the moment that the statute is enacted. We're only challenging the statutory text. The regulations can't change the statutory text. No case has ever held that pending regulations defeat ripeness to a facial challenge to statutory text. It's a misfit argument. It's only been argued once that we know of. That was the Fielder Fourth Circuit case that we cite. The Fourth Circuit easily rejected it. It said, we don't have to wait for the pending regulations because the regulations can't change the statute, and you're only challenging the statute. We are only challenging the statute. Quickly, I want to just clarify. So, a few points were raised on the merits of our claims and whether we already report this information. We do not already report this information. 6050-I is unique in several ways. It requires transaction-by-transaction reporting. None of the annual tax returns require that. It can be freely shared with law enforcement, federal, state, foreign, local law enforcement. No other tax returns can be shared with law enforcement. That raises serious Fourth Amendment and First Amendment questions, and it goes way beyond taxable income. So, the government's own publication, IRS Publication 557, at page 18, we cite it in our briefs, says that Coin Center will have to report its receipt of sponsorships of anything other than charitable contributions. That includes sponsorships that we allege in our amended complaint it will receive. It will have to report those under 6050-I. Those are not taxable income. You have to report things like buying things for over $10,000. You don't have to send in a tax report otherwise for that. So, it goes well beyond any preexisting report. It can be freely shared with law enforcement. The merits cases on this, we think this is stronger than merits cases that have gone plaintiff's ways. Bonta is a First Amendment example. Patel is a Fourth Amendment example where the Supreme Court held that a hotel operator had a Fourth Amendment interest in not sharing customer records with law enforcement. And the just last thing, we agree with the government that the proper recourse, if we went on 12b-1, is remand for 12b-6 in the first instance by the District Court. Their footnote three in their brief says that's the proper recourse. Do we need to do that, given that you briefed the issue in the District Court on the enumerated powers claim? I don't think so, Your Honor. I think so, Your Honor, because we didn't brief it here. If you had adequate briefs in the District Court, why would we need to have separate briefs here? Because the District Court hasn't actually decided the issue. But it's a legal issue. Why do we need to have the District Court do it first? So, I think for a few reasons. One is that you can't expand the scope of the judgment if it wasn't cross-appealed and that would expand the scope of the judgment against us. The other is that they didn't cross-appeal until they didn't give us a chance to brief it before this Court. And so, in every case that we know of, the proper recourse where they didn't ask for that relief, they agreed that the proper recourse would be remanded for consideration on the merits and we didn't have an opportunity to brief it on the merits here. Thank you. Thank you, Your Honors. Thank you both for your argument. The case will be submitted.